UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
SAUL SABINO,                        :
                                            :
                 Plaintiff,           :
                                            :
               - against -          :     20-CV-5861 (EK) (JRC)
                                            :
JAMES OGLE, et al.,                :
                                            :
                 Defendants.      :
------------------------------------------------------------ X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS THE COMPLAINT

LETITIA JAMES
Attorney General of the
State of New York
Attorney for Defendants
28 Liberty Street
New York, NY 10005
Tel. No. (212) 416-8550

August 10, 2022

Andrew Blancato
Assistant Attorney General
*of counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT .................................................................................. 1

ALLEGATIONS OF THE COMPLAINT AND PROCEDURAL HISTORY .............................. 2

STANDARD OF REVIEW ............................................................................................ 3

ARGUMENT ............................................................................................................. 4

  POINT I:  THE COMPLAINT DOES NOT SUFFICIENTLY ALLEGE PERSONAL
               INVOLVEMENT BY DEFENDANT OGLE ............................................ 4

  POINT II:  THE ELEVENTH AMENDMENT BARS OFFICIAL CAPACITY DAMAGES
              CLAIMS .......................................................................................... 9

  POINT III:  PLAINTIFF'S ALLEGATIONS FAIL TO STATE A CLAIM ............................ 9

     a)  PLAITNIFF'S FALSE ARREST CLAIM FAILS TO PLEAD A PLAUSIBLE

        CAUSE OF ACTION AGAINST DEFENDANT OGLE ......................................... 9

     b)  PLAINTIFF'S DUE PROCESS CLAIM ABOUT NOT RECEIVING A HEARING

        BEFORE AN ADMINISTRATIVE HEARING OFFICER IS CONTRADICTED. 11

     c)  PLAINTIFF'S WRONGFUL CONFINEMENT CLAIM IS LIKEWISE

        CONTRADICTED BY THE PUBLIC RECORD ................................................... 12

  POINT IV:  ANY CLAIMS AGAINST DEFENDANT OGLE IN HIS PERSONAL
              CAPACITIES ARE BARRED BY QUALIFIED IMMUNITY ........................... 14

CONCLUSION .......................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Akran v. United States,*
997 F. Supp. 2d 197 (E.D.N.Y. 2014), aff'd 581 F. App'x 46 (2d Cir. 2014) ........................10

*Anderson v. Creighton,*
483 U.S. 635 (1987).........................................................................................................14, 16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..............................................................................................................3, 9

*ATSI Commc'ns Inc. v. The Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007)......................................................................................................3

*Ayers v. Coughlin,*
780 F.2d 205 (2d Cir. 1985)..............................................................................................4, 8

*Baez v. JetBlue Airways Corp.,*
793 F.3d 269 (2d Cir. 2015)..................................................................................................10

*Barnum v. Millbrook Care Ltd.,*
850 F. Supp. 1227 (S.D.N.Y. 1994)........................................................................................4

*Beacon Enterprises, Inc. v. Menzies,*
715 F.2d 757 (2d Cir. 1983)..................................................................................................12

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..........................................................................................................3-4, 9

*Coollick v. Hughes,*
699 F.3d 211 (2d Cir. 2012)..............................................................................................14-15

*Deyver v. Wilson,*
23 F. App'x 52 (2d Cir. 2001) ...............................................................................................12

*DiStiso v. Cook,*
691 F.3d 226 (2d Cir. 2012)..................................................................................................14

*Escalera v. Lunn,*
361 F.3d 737 (2d Cir. 2004)..................................................................................................10

*Farid v. Smith,*
850 F.2d 917 (2d Cir. 1988)....................................................................................................8

*Gathers v. White,*
  No. 04-CV-5454 (JG), 2007 WL 446755 (E.D.N.Y. Feb. 8, 2007), aff'd sub
  nom. *Gathers v. Burdick*, 308 F. App'x 525 (2d Cir. 2009) ................................................10

*Hayden v. Paterson,*
  594 F.3d 150 (2d Cir. 2010) ................................................................................................3-4

*Island Software & Computer Serv., Inc. v. Microsoft Corp.,*
  413 F.3d 257 (2d Cir. 2005) ................................................................................................5, 11

*Kramer v. Time Warner Inc.,*
  937 F.2d 767 (2d Cir. 1991) ................................................................................................4

*Lively v. WAFRA Inv. Advisory Grp., Inc.,*
  6 F.4th 293 (2d Cir. July 23, 2021) ....................................................................................5

*McGowan v. United States,*
  825 F.3d 118 (2d Cir. 2016) ................................................................................................12

*McGowan v. United States,*
  94 F. Supp. 3d 382 (E.D.N.Y. 2015), aff'd 825 F.3d 118 (2d Cir. 2016) ............................10

*Moody v. Daggett,*
  429 U.S. 78 (1976) ................................................................................................................11

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v.*
  *Morgan Stanley Inv. Mgmt. Inc.,*
  712 F.3d 705 (2d Cir. 2013) ................................................................................................3

*People ex rel. Johnson v. Russi,*
  258 A.D.2d 346 (1st Dept. 1999) ........................................................................................11

*People ex rel. Kato v. Warden,*
  2010 WL 1664888, 27 Misc. 3d 1213(A), 910 N.Y.S.2d 407 (N.Y. Sup. Ct.
  Bronx Cty. 2010) (Newman, J.) ..........................................................................................11

*People ex rel. Matos v. Warden,*
  58 A.D.3d 523 (N.Y. App. Div. 1st Dept. 2009) ................................................................12

*People ex rel. Melendez v. Warden,*
  214 A.D.2d 301 (1st Dept. 1995) ........................................................................................11

*People ex rel. Mitchell v. Warden,*
  2015 WL 7160133, 49 Misc. 3d 1214(A), 29 N.Y.S.3d 848 (N.Y. Sup. Ct.
  Bronx Cty. 2015) (Price, J.) ................................................................................................11

*People ex rel. Thompson v. Warden,*
  41 A.D.3d 292 (N.Y. App. Div. 1st Dept. 2007) ................................................................12

*People ex rel. Washington v. N.Y.S. Div. of Parole*,
   279 A.D.2d 379 (N.Y. App. Div. 1st Dept. 2001) .................................................12

*People ex rel. Wise v. N.Y.S. Div. of Parole*,
   50 A.D.3d 303 (N.Y. App. Div. 1st Dept. 2008) ...................................................12

*Prevost v. City of New York*,
   No. 13-CV-3760 (VEC), 2015 WL 9460139 (S.D.N.Y. Dec. 22, 2015) ........................ 9-10

*Reichle v. Howards*,
   132 S. Ct. 2088 (2012) ...............................................................................14

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000) .............................................................................4

*Savino v. City of New York*,
   331 F.3d 63 (2d Cir. 2003) .............................................................................9

*Schafer v. Hicksville Union Free Sch. Dist.*,
   No. 06-CV-2531 JS ARL, 2011 WL 1322903 (E.D.N.Y. Mar. 31, 2011) .......................10

*Scotto v. Almenas*,
   143 F.3d 105 (2d Cir., 1998) ...........................................................................7

*Smith v. Corp. of Washington*,
   61 U.S. 135 (1857) ........................................................................................7

*Smith v. Duquesnay*,
   No. 07 CV 2795 RJD LB, 2012 WL 1116450 (E.D.N.Y. Mar. 30, 2012) ........................6

*Tangreti v. Bachmann*,
   983 F.3d 609 (2d Cir. 2020) ................................................................ 5, 7-8, 13

*Tenenbaum v. Williams*,
   193 F.3d 581 (2d Cir. 1999) ...........................................................................14

*Terebesi v. Torreso*,
   764 F.3d 217 (2d Cir. 2014) ...........................................................................14

*United States v. Ceballos*,
   812 F.2d 42 (2d Cir. 1987) .............................................................................9

*Valentin v. Dinkins*,
   121 F.3d 72 (2d. Cir. 1997) (per curiam) ...........................................................2

*Warley v. Rodriguez*,
   145 A.D.2d 901, 536 N.Y.S.2d 282 (4th Dept. 1988) ...........................................6

*White v. Pauly,*
    137 S. Ct. 548 (2017) ........................................................................ 14

*Wilson v. Layne,*
    526 U.S. 603 (1999) .................................................................... 14-16

*Wright v. Smith,*
    21 F.3d 496 (2d Cir. 1994) ................................................................ 4

**CONSTITUTIONS**

Eleventh Amendment ................................................................................ 1, 8

**STATE STATUTES**

N.Y. Correction Law
    § 24 .................................................................................................... 8

New York Executive Law
    § 259-i(3)(c)(i) ................................................................................ 11

Penal Law
    § 70.45(5)(d)(iii) .............................................................................. 6

**FEDERAL STATUTES**

42 U.S.C.
    § 1983 ...................................................................................... 1, 4, 8-9

**STATE REGULATIONS**

9 NYCRR
    § 8004.2(g) ........................................................................................ 7
    § 8004.3 .............................................................................................. 7
    § 8004.3(e)(1) ........................................................................ 8, 11, 13, 15

**RULES**

Fed. R. Civ. P. 12(d) ................................................................................ 12

Federal Rules of Civil Procedure
    Rule 12(b)(6) .............................................................................. 1, 4-5

Local Civil Rule 12.1 ................................................................................ 12

Rule 12(c) ................................................................................................ 5

Rule 56 ...................................................................................................... 12

# PRELIMINARY STATEMENT

Defendant James Ogle, formerly a Senior Parole Officer ("SPO") employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), respectfully submits this memorandum of law in support of his motion to dismiss the Amended Complaint[1] ("Amended Complaint" or Amend. Compl."), filed July 5, 2022 (Dkt. #31) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff *pro se*, incarcerated in New York City Department of Correction custody ("City DOC"), brought this civil rights action under 42 U.S.C. § 1983 against the chair of the Board of Parole, the City of New York, the Mayor of New York City, and an unnamed former DOCCS employee.  Compl. at 4.[2]  This Court dismissed all defendants *sua sponte* except for The City of New York[3] and the former DOCCS employee and who was later identified as SPO Ogle, whom the Court directed to be added to the caption without an amendment to the Complaint.  See Dkt. ## 6, 8, August 9, 2021 Order.

Plaintiff claims that: (1) the New York City Police Department ("NYPD") falsely arrested him under an invalid parole warrant; (2) any parole warrant was issued "fictitious[ly]" on because he had already reached the maximum expiration date of his underlying sentence; and (3) he was excessively imprisoned before seeing an administrative hearing officer.  Compl. at 4. The Complaint should be dismissed on the grounds that: (1) Defendant Ogle was not personally

---

[1] Plaintiff's complaint filed on November 30, 2020 ("Complaint" or "Compl") contains allegations not duplicated in the Amended Complaint.  Ordinarily, an Amended Complaint supersedes an original Complaint, and renders it with no legal effect."  Jean-Laurent v. Wilkerson, 461 F. App'x 18, 23 (2d Cir. 2012); see also, Pratt v. City of New York, 929 F. Supp. 2d 314, 319 (S.D.N.Y. 2013) ("[T]he general rule is that an amended complaint supersedes an original complaint and renders it without legal effect").  However, the Amended Complaint contains no reference to SPO Ogle at all, but at the same time, Plaintiff does not expressly convey an intent to drop his claims against Ogle.  Accordingly, Defendant will cite to the Amended Complaint but where necessary, Defendant will cite to the paragraphs or page numbers of the Complaint which concern Defendant Ogle.

[2] Pin cites to the Complaint are by Electronic Case Filing (ECF) page number, as the allegations of the Complaint are not divided into paragraphs or numbered.  Plaintiff is being provided with a ECF paginated copy of the Complaint.

[3] The City of New York ("City") was dismissed but pursuant to the Court's February 09, 2022 Order, this Court granted Plaintiff permission to re-name the City of New York as a party which Plaintiff did in its Amended Complaint filed on July 05, 2022.

involved in any allegedly unlawful conduct; (2) The Eleventh Amendment bars official capacity claims; (3) the Complaint fails to state a claim upon which relief can be granted; (4) any claims against Defendant Ogle in his personal capacity are barred by qualified immunity.

## ALLEGATIONS OF THE COMPLAINT AND PROCEDURAL HISTORY

Plaintiff, a previously incarcerated individual,[4] was released into parole supervision by DOCCS on July 18, 2018.  Plaintiff was then arrested by the NYPD in May of 2019 on an outstanding parole warrant.  Plaintiff claims this warrant was "fictitious," as the maximum expiration date for his criminal sentence was November 21, 2018.  See Compl. at 4.  Thereafter, Plaintiff claims that he was detained in City DOC custody for seventy-two (72) days before being released on August 15, 2019, for reasons apparently not known to Plaintiff.  Id.  Plaintiff seeks damages.

Plaintiff was granted *in forma pauperis* filing status on June 22, 2021, but in doing so the Court held that "plaintiff fails to make any allegations against the Chairperson of the New York State Board of Parole or the New York City Mayor that could suggest either had any direct involvement with, knowledge of, or responsibility for the alleged deprivation of plaintiff's civil rights" and thus "the claims against these defendants are dismissed for failure to state a claim[.]" Dkt. # 6 at 3.

The Court further ordered that "[p]ursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d. Cir. 1997) (per curiam) . . . the Court hereby requests the New York State Department of Law to ascertain the full name of the individual parole officer who drafted the parole warrant[.]" Id. at 4. The New York State Office of the Attorney General did so on August 6, 2021, responding that "the most likely identity of the 'individual parole officer who drafted the parole warrant' is former Senior Parole Officer James Ogle." Dkt. # 8.

---

[4] Plaintiff has since been re-arrested on unrelated charges and is currently being held in DOC custody at the Anna M. Kross Center in East Elmhurst, New York.

On October 12, 2021, Defendant Ogle requested an extension of time to respond to the Complaint, which the Court granted on October 13, 2021. Plaintiff then moved several times to amend his Complaint. The Court granted this amendment and Plaintiff amended his Complaint by motion on July 05, 2022. Defendant Ogle now moves to dismiss the Amended Complaint against him.

## STANDARD OF REVIEW

To survive a motion to dismiss, the Plaintiff must assert claims that are recognized by law and plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007); see also ATSI Commc'ns Inc. v. The Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Conclusory allegations are not entitled to the assumption of truth because "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; see Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). More than an "unadorned, the-defendant-unlawfully-harmed-me accusation" is required. Iqbal, 556 U.S. at 678.

Even to the extent that there are factual allegations, a complaint must still state a claim "that is plausible on its face." Iqbal, 556 U.S. at 678. Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 678). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts follow a "two pronged approach" to determine plausibility. Id. at 678. "First, although a complaint need not include detailed factual allegations, it must provide 'more than an

unadorned, the-defendant-unlawfully-harmed-me accusation.'" <u>Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.</u>, 712 F.3d 705, 717 (2d Cir. 2013) (quoting <u>Iqbal</u>, 556 U.S. at 678). Second, "a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" <u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010) (quoting <u>Iqbal</u>, 556 U.S. at 679). If the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [his or her] complaint must be dismissed." <u>Twombly</u>, 550 U.S. at 570.

In deciding a motion under Rule 12(b)(6), a court may consider documents appended to the complaint or incorporated by reference, public records, and documents "that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." <u>Rothman v. Gregor</u>, 220 F.3d 81, 88 (2d Cir. 2000). The court is not required to accept as true allegations in the complaint contradicted by such documents. <u>See</u> <u>Barnum v. Millbrook Care Ltd.</u>, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994). Courts may additionally "consider matters of which judicial notice may be taken" on a Rule 12(b)(6) motion to dismiss. <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 773 (2d Cir. 1991).

## ARGUMENT

### POINT I: THE COMPLAINT DOES NOT SUFFICIENTLY ALLEGE PERSONAL INVOLVEMENT BY DEFENDANT OGLE

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994). Personal involvement "requires a showing of more than the linkage in the prison chain of command; the doctrine of respondeat superior does not apply."

Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985). The Second Circuit recently considered these issues:

> Before the Supreme Court decided *Iqbal*, we identified five categories of evidence that may establish the liability of a supervisory official for a subordinate's conduct under § 1983…. *Iqbal* cast doubt on the continued viability of the special standards for supervisory liability set forth in *Colon*. See Reynolds v. Barrett, 685 F.3d 193, 205 n.14 (2d Cir. 2012). Without clear direction from this court, district courts in the circuit have sought, with inconsistent results, to determine the effect of *Iqbal* on supervisory liability…. Circuit courts have considered the impact of *Iqbal* as well…. We join these circuits in holding that after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

Tangreti v. Bachmann, 983 F.3d 609, 616-18 (2d Cir. 2020) (footnote omitted).

Here, Plaintiff clams he was falsely arrested by NYC Police Officers and fails to even mention Defendant Ogle. See generally, Amen. Compl. In his original Complaitn, Plaintiff claims that after his arrest, he did not receive a hearing before an administrative hearing officer for seventy-two days, and the parole warrant was "fictitious" because he was arrested after the maximum expiration date of his sentence. See Compl. p.4. There truly was a parole warrant against Plaintiff, issued on August 23, 2018. See Parole Warrant, annexed to the accompanying Declaration of Andrew Blancato as **Exhibit A**. See Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 305 (2d Cir. July 23, 2021) ("courts may on a Rule 12(c) motion—just as on a Rule 12(b)(6) motion—consider extrinsic material that the complaint 'incorporate[s] by reference,' that is 'integral' to the complaint, or of which courts can take judicial notice") (brackets in original); Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 261 (2d Cir. 2005) ("a court may take judicial notice of facts that are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned'").

The parole warrant was issued on August 23, 2018.  See **Ex. A**.  Plaintiff alleges that his sentence expired on November 21, 2018.  See Amen. Compl., ¶ 2.  Thus, at the time the parole warrant was issued, Plaintiff still owed time to his sentence.  As a matter of law, the declaration of delinquency and issuance of a parole warrant suspend the running of a sentence.  See Penal Law § 70.45(5)(d)(iii) ("the declaration of delinquency shall interrupt the period of post-release supervision");  see Smith v. Duquesnay, No. 07 CV 2795 RJD LB, 2012 WL 1116450, at *3 (E.D.N.Y. Mar. 30, 2012) ("effect of delinquency on parole from an indeterminate sentence); when a person under parole supervision is declared delinquent and re-incarcerated, 'the declaration of delinquency shall interrupt the person's sentence as of the date of the delinquency and such interruption shall continue until the return of the person to an institution under the jurisdiction of the state department of corrections and community supervision' ").  Under New York law, the delinquency date is the date of the violation of the conditions of parole, and the final declaration of delinquency, which does not occur until revocation, which may not occur until years later, may establish the delinquency date retroactively and lead to recalculation of the maximum expiration date of the term, even if the underlying sentence has expired in the interim. See Warley v. Rodriguez, 145 A.D.2d 901, 901-02, 536 N.Y.S.2d 282 (4th Dept. 1988).

Thus, at the time Plaintiff was arrested, his sentence was subject to extension by operation of law and the parole warrant was still valid on that basis.  Accordingly, since Plaintiff alleges no involvement by Defendant Ogle at all in his Amended Complaint and none in his Complaint beyond the issuance of the parole warrant (see generally, Compl.), Plaintiff's claim can be restated as a question of whether Defendant Ogle, personally, had a constitutional obligation to cancel the parole warrant after November 21, 2018.

Defendant Ogle had no such constitutional obligation because he did not have the authority to cancel the parole warrant. "At any time after the issuance of a warrant for retaking and temporary detention, and before the preliminary hearing or waiver thereof, an officer of the division assigned to field service *and holding a title above senior parole officer*, after consultation with the designated officer issuing the warrant, may report in writing such circumstances concerning the warrant as are relevant to a board member who may then vacate the warrant.".[5] 9 NYCRR § 8004.2(g) (emphasis added). Thus, by operation of law, cancellation of parole warrants in these circumstances can only be done by an authority higher than Defendant Ogle, a single Senior Parole Officer. See Dkt. # 8. Because Defendant Ogle had no authority to cancel the parole warrant after he issued it on August 23, 2018, and Plaintiff's sentence still had three months remaining at that point, he cannot be responsible for what was done with it after it was issued. See Smith v. Corp. of Washington, 61 U.S. 135, 148 (1857) ("not liable to damages where they have committed no wrong, but have fulfilled a duty imposed on them by law as agents of the public"); see generally Scotto v. Almenas, 143 F.3d 105 (2d Cir., 1998). Moreover, while Defendant Ogle signed the warrant (see **Ex. A**), he was neither the Parole Officer nor the Senior Parole Officer responsible for Plaintiff's compliance with parole conditions. See Status Inquiry Summary, Blancato Dec., **Exhibit B**, ("SPO Taylor, Paul" and "PO Felix, Kevin").

As there was still time on Plaintiff's sentence when the parole warrant was issued and Defendant Ogle lacked authority to cancel it thereafter, and he was not alleged to have been involved in the parole revocation proceedings, the sole remaining issue for whether Defendant Ogle was personally involved with Plaintiff's alleged constitutional deprivation is whether

---

[5] 9 NYCRR § 8004.3 was subsequently revised to remove section (e), but at all times relevant to this incident, this section was in effect.

Defendant Ogle engaged in sufficient further action with parole revocation proceedings.  See Tangreti, 983 F.3d at 616.  However, the Complaint does not allege anything further about Defendant Ogle, even under his prior "Doe" status.  See Compl. at 4.  Accordingly, neither the Amended Complaint nor the Complaint have failed to "plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." Tangreti, 983 F.3d at 616.

Alternatively, Plaintiff's claims against the NYPD plainly do not show personal involvement by Defendant Ogle, who is not employed by the NYPD and is not alleged to have personally cooperated with it.  See Tangreti, 983 F.3d at 616.  Likewise, Plaintiff does not allege that Defendant Ogle was personally involved in the process of detaining him, pursuing parole revocation charges, or releasing him.  See Compl. at 4.  As far as Defendant Ogle is concerned, these allegations amount to no more than either responsibility for starting the process by issuing the parole warrant or responsibility as a supervisor.  As discussed above, Defendant Ogle did not violate anyone's rights by issuing the parole warrant with three months in Plaintiff's sentence then remaining, and *respondeat superior* liability is not cognizable in § 1983 actions.  See **Ex. A**; Tangreti, 983 F.3d at 616; Ayers, 780 F.2d at 210.

Given that Plaintiff's sentence was yet unexpired when the parole warrant was issued (see Blancato Dec., **Ex. A**; cf. Compl. at 4), and that Defendant Ogle had no authority to cancel the parole warrant thereafter (see 9 NYCRR § 8004.3(e)(1)), the claims against him are at most barred for lack of personal involvement. See Tangreti, 983 F.3d at 616; Ayers, 780 F.2d at 210. Therefore, Defendant Ogle should be dismissed for lack of personal involvement.

## POINT II:  THE ELEVENTH AMENDMENT BARS OFFICIAL CAPACITY DAMAGES CLAIMS

Plaintiff's claims for damages against the Defendants in their official capacity, to the extent pled, are barred by the Eleventh Amendment.  See Seminole Tribe of Florida, 517 U.S. 44 (1996); Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988) ("[t]he Eleventh Amendment bars recovery against an employee who is sued in his official capacity . . . 'a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself'" (quoting Kentucky v. Graham, 473 U.S. 159, 166 – 67 (1985)).

## POINT III:  PLAINTIFF'S ALLEGATIONS FAIL TO STATE A CLAIM

Even construing the *pro se* Complaint liberally Plaintiff's factual allegations are almost exclusively conclusory recitations, and thus are insufficient to state a plausible claim pursuant to Twombly, 550 U.S. at 555, 570 and Iqbal, 556 U.S. at 678-79.  Plaintiff's claims amount to issues of false arrest by the NYPD, not being afforded any parole revocation hearings under procedural due process, and wrongful confinement under the parole warrant as being "fictitious." Compl. at 4.  None of these allegations have merit.

### a) PLAITNIFF'S FALSE ARREST CLAIM FAILS TO PLEAD A PLAUSIBLE CAUSE OF ACTION AGAINST DEFENDANT OGLE

To establish a false arrest claim, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was aware of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.  Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003).  Confinement is "privileged" or "justified" when there is probable cause for it.  Id. at 76.  "'Probable cause is a complete defense to any action for false arrest or malicious prosecution in New York,' and, by extension, a defense to liability under Section 1983."  Prevost v. City of New York, No. 13-CV-

3760 (VEC), 2015 WL 9460139, at *2 (S.D.N.Y. Dec. 22, 2015) (citation omitted, quoting Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010)).

When determining whether probable cause exists, the court must look at the "totality-of-the-circumstances" as "seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." United States v. Ceballos, 812 F.2d 42, 50 (2d Cir. 1987) (quotation marks and citations omitted). Typically, probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (quotation marks and citation omitted); see Gathers v. White, No. 04-CV-5454 (JG), 2007 WL 446755, at *5 (E.D.N.Y. Feb. 8, 2007) (applying the parole regulation "reasonable cause" standard that "exists when evidence or information which appears reliable discloses facts or circumstances that would convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that a releasee has committed the acts in question or has lapsed into criminal ways or company"), aff'd sub nom. Gathers v. Burdick, 308 F. App'x 525 (2d Cir. 2009). The court must "consider those facts *available to the officer* at the time of the arrest and immediately before it." Prevost, 2015 WL 9460139 at *2.

Probable cause is not the only way to establish a privilege. See, e.g., Baez v. JetBlue Airways Corp., 793 F.3d 269, 274 (2d Cir. 2015) (detention privileged because of statutory immunity); Akran v. United States, 997 F. Supp. 2d 197, 206 (E.D.N.Y. 2014) (privileged deportation detention until citizenship was proved because it was the plaintiff's burden to prove citizenship), aff'd 581 F. App'x 46 (2d Cir. 2014); Schafer v. Hicksville Union Free Sch. Dist., No. 06-CV-2531 JS ARL, 2011 WL 1322903, at *13 (E.D.N.Y. Mar. 31, 2011) (denying

summary judgment where jury could conclude that "conduct was reasonably necessary and thus privileged"). "The inquiry ends, at least for purposes of the tort of false imprisonment, upon the finding that some form—any form—of confinement was legally permitted." McGowan v. United States, 94 F. Supp. 3d 382, 391 (E.D.N.Y. 2015), aff'd 825 F.3d 118 (2d Cir. 2016).

Even construing Plaintiff's *pro se* claims liberally, he cannot state a claim either that Defendant Ogle caused him to be falsely arrested or even that he was falsely arrested to begin with. Most simply, as discussed above, when Defendant Ogle issued the parole warrant Plaintiff still had three months unexpired on his sentence. See Blancato Dec. **Ex. A**. There are no allegations that the warrant was unlawfully issued or based on sufficient grounds at the time it was issued. Also as discussed above, Defendant Ogle had no power to cancel the parole warrant once it was issued. See 9 NYCRR § 8004.3(e)(1). Accordingly, Plaintiff's claim that the NYPD falsely arrested him cannot be attributed to Defendant Ogle.

### b) PLAINTIFF'S DUE PROCESS CLAIM ABOUT NOT RECEIVING A HEARING BEFORE AN ADMINISTRATIVE HEARING OFFICER IS CONTRADICTED

As a general rule, New York Executive Law § 259-i(3)(c)(i) affords parolees with the right to a preliminary hearing within fifteen days after a parole warrant is executed. But see People ex rel. Johnson v. Russi, 258 A.D.2d 346, 347 (1st Dept. 1999) (statutory disentitlement); People ex rel. Melendez v. Warden, 214 A.D.2d 301 (1st Dept. 1995) (waiver). Counting backwards from when Plaintiff claims to have been released and how long he claims to have been in custody, Plaintiff would have been taken into custody on June 4, 2019, in the vicinity of Plaintiff's claim that he was arrested in May 2019. See Compl. at 4. DOCCS records agree that the parole warrant was lodged[6] as a detainer on June 4, 2019. See Blancato Dec. **Ex. B**.

---

[6] Lodging and execution are not synonymous. See Moody v. Daggett, 429 U.S. 78, 86 (1976) ("Issuance of the warrant and notice of that fact to the institution of confinement did no more than express the Board's intent to defer consideration of parole revocation to a later time"); People ex rel. Kato v. Warden, 2010 WL 1664888 at *4, 27

However, Plaintiff did in fact receive a preliminary hearing before an administrative hearing officer on June 19, 2019. Blancato Dec. **Exhibit C,** Preliminary Violation Hearing Decision and Summary. See Island Software & Computer Serv., Inc., 413 F.3d at 261 ("a court may take judicial notice of facts that are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned'").[7] While Plaintiff himself was not present, the hearing convened with his assigned counsel and the administrative hearing officer ordered that the parole warrant be vacated on non-substantive grounds.[8] See Blancato Dec. **Ex. C**. DOCCS records show that the parole warrant was in fact closed as vacated on June 19, 2019. See Id. **Ex. B** ("Closure Date" and "Closure Reason").

Accordingly, Plaintiff received not only the administrative hearing required by due process, it was afforded within the time limit prescribed only statutorily. Therefore, Plaintiff's allegation contradicts the judicially noticeable record and cannot state a plausible claim.

c) PLAINTIFF'S WRONGFUL CONFINEMENT CLAIM IS LIKEWISE CONTRADICTED BY THE PUBLIC RECORD

"Some New York courts have described the tort of wrongful confinement as a 'species of false imprisonment.' To recover for wrongful confinement, a prisoner must demonstrate that 'he

---

Misc. 3d 1213(A), 910 N.Y.S.2d 407 (N.Y. Sup. Ct. Bronx Cty. 2010) (Newman, J.) (same, citing Moody); see also People ex rel. Mitchell v. Warden, 2015 WL 7160133 at *4, 49 Misc. 3d 1214(A), 29 N.Y.S.3d 848 (N.Y. Sup. Ct. Bronx Cty. 2015) (Price, J.) (same).

[7] Although the Court may take judicial notice of the official records of the parole revocation hearing Plaintiff claims should have taken place, should the Court determine not to, it may convert this motion into one for summary judgment under Rule 56 with notice to all parties, see Fed. R. Civ. P. 12(d), which the defendants ask the Court to do here. See Deyver v. Wilson, 23 F. App'x 52, 54 (2d Cir. 2001) ("in *pro se* cases a district court may not convert a motion to dismiss into a motion for summary judgment without providing unequivocal notice of such conversion"); Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 767 (2d Cir. 1983) ("On a 12(b)(6) motion, if 'matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment' "). Whether done as a matter of judicial notice or as a matter of summary judgment, the public records plainly show that Plaintiff received a preliminary hearing before an administrative hearing officer and was released at it. Towards that end, Plaintiff is being served with a Local Civil Rule 12.1 Notice to Pro Se Litigant.

[8] The ALJ did not have the authority to do this. See People ex rel. Matos v. Warden, 58 A.D.3d 523, 523 (N.Y. App. Div. 1st Dept. 2009); People ex rel. Wise v. N.Y.S. Div. of Parole, 50 A.D.3d 303, 303 (N.Y. App. Div. 1st Dept. 2008); People ex rel. Thompson v. Warden, 41 A.D.3d 292, 292 (N.Y. App. Div. 1st Dept. 2007); People ex rel. Washington v. N.Y.S. Div. of Parole, 279 A.D.2d 379, 380 (N.Y. App. Div. 1st Dept. 2001).

had been subjected to punitive segregation for no legitimate reason and without the rudimentary protections of due process.'" McGowan v. United States, 825 F.3d 118, 126 (2d Cir. 2016) (citation omitted).

Defendant Ogle was uninvolved with the parole revocation proceedings that took place. See Blancato Dec. **Ex. C**. Accordingly, no plausible claim can be established against him. Moreover, the parole warrant was cancelled on June 19, 2019. See Blancato Dec., **Ex. B**; Hearing Outcome Notification, Blancato Dec., **Exhibit D**. Whether any further detention took place cannot be attributed to any State defendant, and certainly not Defendant Ogle.

Even if this claim were still cognizable as traditional false imprisonment, it still fails to state a plausible claim against Defendant Ogle. As discussed above, Defendant Ogle had no authority to cancel the parole warrant once it was issued (see 9 NYCRR § 8004.3(e)(1)), and he was not personally involved in the hearing process resulting in cancellation of the warrant.

While Plaintiff alleges that he was detained for approximately two months thereafter (see Compl. at 4), he fails to allege anything indicating that it was personally because of Defendant Ogle. See Tangreti, 983 F.3d at 616. Moreover, Plaintiff fails to allege anything indicating that the delayed release was intentional by Defendant Ogle – or in fact anyone. See Compl. at 4.

In the present case, beyond Ogle's lack of personal involvement as discussed above, the parole warrant was lifted at a parole revocation hearing appearance on June 19, 2019, was listed as "closed" because the "proc[eeding was] canc[elled]" in DOCCS records the same day. See Blancato Dec., **Ex. B, Ex. C**. Likewise, DOCCS notified City DOC that the parole warrant had been vacated also on June 19, 2019. See Id. **Ex. D**. At minimum, this demonstrates that whoever at DOCCS was responsible for terminating the parole warrant – a person plainly not

Defendant Ogle, acted in a manner showing that any delay was not intentional. Therefore, Plaintiff has failed to plausibly plead a false imprisonment claim, and it should be dismissed.

**POINT IV:  ANY CLAIMS AGAINST DEFENDANT OGLE IN HIS PERSONAL
CAPACITIES ARE BARRED BY QUALIFIED IMMUNITY**

Government officials are entitled to qualified immunity when either (1) the "official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,'" or (2) it was objectively reasonable for the official to believe that her acts did not violate these clearly established rights.  White v. Pauly, 137 S. Ct. 548, 551 (2017); Tenenbaum v. Williams, 193 F.3d 581, 596 (2d Cir. 1999).

"Qualified immunity thus affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions, and 'protects all but the plainly incompetent or those who knowingly violate the law' from liability for damages."  DiStiso v. Cook, 691 F.3d 226, 240 (2d Cir. 2012) (citations omitted).  "To determine whether the relevant law was clearly established, we consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law.  Even if this Court has not explicitly held a course of conduct to be unconstitutional, we may nonetheless treat the law as clearly established if decisions from this or other circuits clearly foreshadow a particular ruling on the issue."  Terebesi v. Torreso, 764 F.3d 217, 231 (2d Cir. 2014) (quotes and citations omitted)

"Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."  Coollick v. Hughes, 699 F.3d 211, 221 (2d Cir. 2012) (internal quotation marks and citation omitted).  "To be clearly established," every "reasonable official would [have understood] that what he is doing violates" the law.  Reichle v. Howards, 132 S. Ct. 2088, 2093

(2012) (citation omitted). When there is "an undeveloped state of the law, the officers in this case cannot have been expected to predict the future course of constitutional law." Wilson v. Layne, 526 U.S. 603, 617 (1999) (quotes and citation omitted).

Here, even assuming that Plaintiff's rights were violated,[9] the law was not sufficiently established to have "placed the statutory or constitutional question *beyond debate*" and make Defendants Ogle's actions "transgressing bright lines." Liberian Cmty. Ass'n of Connecticut, 970 F.3d at 186 (emphasis in original); Coollick, 699 F.3d at 221. Anderson v. Creighton, 483 U.S. 635, 639 (1987) ("whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken"); Liberian Cmty. Ass'n of Connecticut, 970 F.3d at 186 ("when the general rule of qualified immunity is applicable, officials can know that they will not be held personally liable as long as their actions are reasonable in light of current American law").

As discussed above, the total extent of Defendant Ogle's actions was issuing the parole warrant on August 23, 2018 – three months before the date Plaintiff alleges his sentence was estimated to expire. See Compl. at 4; Blancato Dec. **Ex. A**. Likewise, as a Senior Parole Officer, Defendant Ogle was by operation of law not one of the people empowered to cancel an active parole warrant, even if he was aware of Plaintiff's arrest, which is not alleged. See 9 NYCRR § 8004.3(e)(1). Defendant Ogle was not involved in the parole revocation hearing process that ultimately cancelled the warrant. See Blancato Dec. **Ex. B; Ex. C; Ex. D**.

Plaintiff does not allege that Defendant Ogle had anything to do with keeping him in custody aside from issuing that August 23, 2018 parole warrant. See Compl. at 4. Consequently, it cannot be reasonably said that it was "transgressing bright lines" for Defendant

---

[9] As discussed above, Plaintiff's rights were not violated and thus he cannot state a claim.

Ogle to issue a parole warrant at a time when the underlying sentence remained unexpired. <u>Coollick</u>, 699 F.3d at 221.

Plaintiff alleges nothing to suggest that at the time SPO Ogle issued the parole warrant that it was not lawfully issued. Plaintiff alleges nothing to suggest that Ogle had any subsequent role. Even if somebody subsequently violated Plaintiff's rights, Ogle's inability to predict the future was not a constitutional violation, (<u>see</u> <u>Wilson</u>, 526 U.S. at 617), and issuing a parole warrant with months unexpired on the sentence showed "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." <u>Anderson</u>, 483 U.S. at 639.

To the extent that he was involved, Defendant Ogle could not have predicted the future course of events and is therefore entitled to qualified immunity. <u>See</u> <u>Wilson</u>, 526 U.S. at 617.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion to dismiss Plaintiff's Complaint its entirety and enter judgment dismissing all of the claims in this action, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      August 10, 2022

LETITIA JAMES
Attorney General for the State of New York
Attorney for Defendant
*/s/ Andrew Blancato*
Andrew Blancato
Assistant Attorney General
28 Liberty Street
New York, New York 10005
Tel. (212) 416-6359
Andrew.Blancato@ag.ny.gov
